*Steven D. Cahn, Esq.* (SC5459)
*Cahn & Parra, LLC*
*1015 New Durham Road*
*Edison, New Jersey 08817*
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TOWNSHIP OF PISCATAWAY, EDWIN
MARKANO, WILLIAM MALLEK, GUY
SUABEDISSEN, TIMOTHY AND
PATRICIA SIMMONDS, ROBERT AND
GAIL HESELTINE, JUDITH PAYNE,
MICHAEL AND DONNA MATUCH,
THERESA FLEMING, ANGELO AND
CHARLENE BARISO, KYLEENE COX,
ALLEN HOWARD, PEGGY FRIEDMAN,
NORMAN AND LIBBY HERMAN, AND
JOEL AND NAOMI SHAPIRO,

        Plaintiffs,

      v.

DUKE ENERGY AND TEXAS EASTERN
TRANSMISSION CORP.,

        Defendants.

*CIVIL ACTION*

*Hon. Faith S. Hochberg*
*Civil Action No. 01-CV4828*
*(AMW)*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND ENCLOSURES

*Steven D. Cahn, Esq.*
 *On the Brief*

# *TABLE OF CONTENTS*

**PAGE NO.**

*TABLE OF CONTENTS* ........................................................  *– i –*

*TABLE OF CITATIONS* ........................................................  *– ii –*

*LIST OF ENCLOSURES* ........................................................  *– iv –*

*PROCEDURAL HISTORY* ........................................................  *1*

*PLAINTIFF'S STATEMENT OF FACTS* ........................................................  *4*

*LEGAL ARGUMENT*

*POINT ONE:  THE PLAINTIFFS' CROSS MOTION FOR
SUMMARY JUDGMENT SHOULD BE
GRANTED BECAUSE THERE IS NO
GENUINE ISUE AS TO ANY MATERIAL
FACT* ........................................................  *10*

*POINT TWO  THE DEFENDANTS SHOULD BE PREVENTED
FROM REMOVING THE TREES ON THE
EASEMENT BASED ON THE EQUITABLE
PRINCIPALS OF LACHES* ........................................................  *12*

*CONCLUSION* ........................................................  *23*

## *TABLE OF CITATIONS*

**PAGE NO.**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ...............     11

Brooklawn v. Brooklawn Housing Corp. 124 N.J.L. 73 (E. & A. 1940)..     22

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) .....................     10,11

Daubert v Merrill Dow Pharmaceuticals Inc. 509 U.S. 579 (1993).......     19

First National State Bank v. Carlyle House, Inc. 102 N.J. Super. 300
(Ch. Div. 1968), aff'd 107 N.J. Super. 389 (App. Div. 1969), certif.
den. 55 N.J. 316 (1970) .....................................................     22

Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976),
cert. denied, 429 U.S. 1038 (1977) ........................................     10

Hammett v. Rosensohn, 26 N.J. 415,425 (1958) ......................     19

Hinners vs. Banville, 114 N.J. Eq. 348 (1933) ........................     13

Hyland v. Fonda, 44 N.J. Super. 180 (App. Div. 1957). .............     19

Lavin v. Board of Education of the City of Hackensack, 90 N.J. 145
(1982) .........................................................................     13,14,15,19

Lidgerwood Estates, supra, 113 N.J. Eq. at 407 .....................     20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586-87 (1986) ...............................................................     11

Old Republic Insurance Company vs. Currie, 284 N.J. Super. 571
(1995) .........................................................................     13

Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173
(3d Cir. 1988). ..............................................................     10

Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591,606 (1964) ..     19,20

West Jersey Title and Guaranty Company vs. Industrial Trust Co.,
27 N.J. 144 (1958) .........................................................     13,14

Fed. R. Civ. P. 56(c) ........................................................... 10,11

25 Williston on Contracts §67: 21 (4th Ed.) ........................... 13

- iii -

## *LIST OF ENCLOSURES*

*Enclosure 1 -*     *MEMORANDUM OPINION*

*Enclosure 2 -*     *FINAL PRETRIAL ORDER*

*Enclosure 3 -*     *RIGHT OF WAY EASEMENT MAY 6, 1944*

*Enclosure 4 -*     *RIGHT OF WAY EASEMENT JANUARY 28, 1960*

*Enclosure 5 -*     *RIGHT OF WAY DEED JANUARY 23, 1963*

*Enclosure 6 -*     *CERTIFICATION OF BRUCE HAMILTON*

*Enclosure 7 -*     *TRANSCRIPT OF PROCEEDINGS JUNE 5, 2000*

*Enclosure 8 -*     *AFFIDAVIT OF JUDY PAYNE*

*Enclosure 9 -*     *AFFIDAVIT OF PEGGY FRIEDMAN*

### *PROCEDURAL HISTORY*

This action began when the individual homeowners acting in concert with the Township of Piscataway filed an order to show cause in the Chancery Division of the Middlesex County Superior Court, seeking a temporary restraining order enjoining the defendants from removing trees and shrubbery from Fountain Avenue in Piscataway, New Jersey. On or about August 5, 2001 New Jersey Superior Court Judge the Hon. Joseph Messina, J.S.C., after hearing argument, issued a Temporary Restraining Order preventing the defendants from removing the trees in question. The order provided that the defendants could move on two days notice to have the court remove this order. The defendants did not challenge this order but chose to have the matter removed to the Federal District Court based on diversity.

The matter was removed and the defendants filed a motion to dissolve the restraining order. The issue of the restraining order was briefed and argued before the Honorable Alfred M. Wolin, U.S.D.J. The court ruled in favor of the plaintiffs and issued a written opinion and order on March 14, 2002 that Judge Messina's preliminary injunction shall stay in place until the matter was fully litigated.     [Enclosure 1] The parties thereafter engaged in discovery.

On or about March 3, 2003 the Township of Piscataway settled with the defendants.    This settlement required a payment of $65,000.00.    The settlement agreement particularly stated that these monies would be held in escrow until the balance of the litigation was resolved. The Township agreed to removal of some trees as outlined on a Settlement Map. [ Defense trial exhibit 13]

At the time of the Settlement Agreement all parties understood that the individual plaintiffs would continue this litigation with their own causes of action. Despite the settlement with the Township, no action was taken and all of the trees in question have remained. The parties then engaged in numerous settlement conferences, several of which were directed by the court, and others with the assistance of elected officials who have attempted to act as mediators in this case. To date, the matter is unresolved. A final Pre-Trial Order was issued on November 24, 2003. [Enclosure 2] A conference was held on this matter before the Honorable Patty Schwartz , U.S.M.J. on February 19, 2005. This case was shortly thereafter transferred to the Honorable Faith S. Hochberg, U.S.D.C. who has issued two scheduling orders dated March 10, 2005 and March 11, 2005. The parties appeared in Court on April 26,2005 for a hearing on motions as directed by the court. On April 26, 2005 the Honorable Faith Hochberg U.S.D.C. denied the defense motion to dismiss the plaintiffs' complaint for lack of standing, and the plaintiffs' request for a jury trial was also denied. The court further ordered that the parties appear on Thursday April 28, 2005 before Honorable Patty Schwartz, U.S.M.J. for a settlement conference. The parties appeared, however the matter was not resolved.

The Court further ordered that in the event the case was not settled, additional briefs on limited issues be prepared. The plaintiffs were ordered to file an affirmative motion on the issue of "laches" addressing whether the defendants should now be estopped from pursuing their claim to remove trees based on their inaction over a lengthy period of time. The defendants were ordered to file a motion to specifically address the issue of whether the plaintiffs could proceed with their nuisance cause of action.

2

The plaintiffs have styled this brief as one of summary judgment because of the dispositive nature of laches and the relief now being requested.

### *PLAINTIFFS' STATEMENT OF FACTS*

1. The plaintiffs in this case, Edwin Markano, William Mallek, Guy Suabedissen, Timothy and Patricia Simmonds, Robert and Gail Heseltine, Judith Payne, Michael and Donna Matuch, Theresa Fleming, Angelo and Charlene Bariso, Kyleene Cox, Allen Howard, Peggy Friedman, Norman and Libby Herman, and Joel and Naomi Shapiro, are residential homeowners, who reside on Fountain Avenue in the Township of Piscataway.

2. The defendant, Duke Energy Operating Company, LLC, is a Delaware Limited Liability Company, whose principal place of business is located in Houston, Texas. The defendant, Texas Eastern Transmission, LP, is a Delaware Limited Partnership, whose principal place of business is in Houston, Texas. [Enclosure 2]

3. The defendants are engaged in the business of transportation distribution and sale of natural gas and other related products. [Enclosure 2]

4. The defendants transport natural gas through several pipelines that operate throughout the United States and Canada. The pipelines relevant to this litigation run from the Gulf of Mexico through New Jersey, serving customers in the northeast. [Enclosure 2]

5. The defendants operate three natural gas pipelines running through a right-of-way easement on Fountain Avenue in the Township of Piscataway. Within this easement, the defendants operate two (2) twenty-inch and one (1) thirty-six inch natural gas pipelines. [Enclosure 2]

6. On or about May 6, 1944, the initial easement establishing the defendants'

rights were recorded. In this easement, the original Grantors, Flora D. Heath and H. Morgan Heath, were owners in fee simple of property located in the Township of Piscataway. The easement granted to Defense Plant Corporation, its successors and assigns, an easement in order to "lay, operate, and maintain a pipeline". [Enclosure 2]

7. The Defense Plant Corporation is a predecessor in title to both Duke Energy Operating Company and Texas Eastern Transmission, the defendants in this action. [Enclosure 2]

8. The original fee simple owners of the property granting this easement, Flora D. Heath and H. Morgan Heath, are predecessors in title to the individual plaintiffs in this case. [Enclosure 2]

9. The May 6, 1944 Deed conveying an easement to the defendants predecessor in title, Defense Plant Corporation, provides Defense Plant Corporation, its successors and assigns, the right to install, operate, and maintain a pipeline. This easement also places conditions and limitations on those rights. The original Deed specifically states:

> "By the acceptance hereof, Grantee agrees to bury
> such pipelines so that they will not interfere with the
> cultivation or drainage of the land and also to pay any
> and all damages to stock, crops, fences, timber and land
> which may be suffered from the construction, operation,
> renewal, alteration, inspection, or maintenance of such
> pipelines." [Enclosure 3,4]

5

10. The Defense Plant Corporation constructed two (2) twenty-inch pipelines across the easement pursuant to the rights granted to them by the 1944 right-of-way. [Enclosure 2]

11. On or about January 28, 1960, a right-of-way Deed was granted and recorded between the plaintiffs' predecessor in title and the defendants, Texas Eastern Transmission Corporation. The purpose of this Deed was to authorize the construction of an additional pipeline within the right-of-way easement. [Enclosures 2,4]

12. The plaintiffs' predecessors in title, contemplated the sale of the property to a developer for residential development and in 1963, asked the defendants to modify the right-of-way easement so that these properties could be developed. [Enclosures 2, 5]

13. Pursuant to a request by the plaintiffs' predecessor in title, the defendants and their predecessors in title agreed to reduce and modify the size of the right-of-way easement as set forth in the 1944 and 1960 Deeds previously referenced. [Enclosures 2, 5]

14. All of the rights and conditions as set forth in the 1944 and 1960 right-of-way Deeds remained in tact. [Enclosures 2,5]

15. On January 23, 1963, a deed was recorded to clarify up all issues with respect to title to the plaintiffs' property. This 1963 Deed modified the size of the defendants' easement but kept in tact the rights and restrictions in the 1944 and 1960 deeds. The purpose of the 1963 Deed was to enable the plaintiffs' predecessors in title, Flora D. Heath and H. Morgan Heath, and Max Richter and Milder Richter, and Philip Gerber and Ethel Gerber, to convey good and marketable title to JMS Construction Company for the purpose of residential development. [Enclosure 2, 5]

6

16. The 1963 Deed makes this instrument binding on all successors and assigns to the property in question. [Enclosure 5]

17. This 1963 Deed recites the chain of ownership of the properties in question and establishes that the fee simple owners of the property in question are now Avon Ridge Homes, Trafalger Homes, Inc., and Brentwood Villages Homes, Inc. [Enclosure 5]

18. The 1963 Deed has attached to it a drawing prepared by the defendants, Texas Eastern Transmission Corporation, which indicates a proposed residential development, including, but not limited to, Fountain Avenue. [Enclosure 5]

19. At the time of this 1963 Deed, the defendants and/or the defendants' predecessors in title, understood that this property would undergo residential development, including the installation of public streets, sidewalks, the construction of homes, and the planting of trees, shrubs, and other vegetation. [Enclosure 5]

20. The developer of this neighborhood, which was called University Hill, built the homes in question, including the homes on Fountain Avenue, which are the subject of this litigation. The developer also planted the street or shade trees (London Plane Trees), which are the subject of this litigation. [Enclosure 5]

21. These trees were planted in approximately 1963 by the plaintiffs' predecessor in title for the benefit of the plaintiffs. (future homeowners) [Enclosure 2]

22. These trees were planted by the plaintiffs' predecessor in title with the full knowledge and approval of the defendants and/or the defendants' predecessors in title. [Enclosure 5]

23. The London Plain Trees, which were planted in approximately 1963, have co-

7

existed within the defendants' easement and with the pipelines in question undisturbed since approximately 1963.

24. The defendants have never asserted a legal right to remove the trees in question until this litigation. [Enclosure 9]

25. The defendants have made no effort to determine if the trees in their easement have root structures that encroach on or endanger the pipeline. [Enclosures 6, 7, 9]

26. The defense proposal for tree removal includes cutting all trees in the easement, grinding down the stumps and leaving the root structure in the ground without any determination if there is root involvement with the pipeline. [Enclosure 9]

27. There is no law, regulation, or statute that requires tree removal in the right of way easement. [Defendants trial brief page 7]

28. The pipelines in issue are tested with a device referred to as an electronic pig. This device is inserted through the pipe and has the ability to determine any anomalies within a particular pipeline. This has been done for years on the section of pipeline at issue in this case and the parties have stipulated in the final pretrial order that no problems have ever been identified. [Enclosure 2]

29. The Department of Transportation has promulgated regulations requiring pipeline companies to patrol their pipelines. The regulations do not require any specific patrol pattern nor do they require aerial surveillance or tree removal. [Defense Trial Brief page 8;  49 C.F.R. Section 192.705 (a)]

30. The defendants are in full compliance with all federal, state, and local laws and regulations. [Defense trial brief page 8-9]

31. The defendants filed a motion for partial relief from the Temporary restraining order seeking the right to remove five (5) trees in their easement involving homes on Fountain Avenue in which the homeowners were not plaintiffs to this action. This was unopposed by the plaintiffs. On January 7, 2005 an order was issued permitting the removal of the five (5) trees subject to that motion.

32. The defendants removed these five (5) trees, however they left the tree stumps and roots in the ground. No effort was made to check on root growth or to remove any parts of the tree root system below the surface. [Enclosure 9]

33. The individual homeowners, plaintiffs in this action, all took title to their property with the knowledge and understanding that the trees were planted in the pipeline right of way but were permitted by the defendants based on the longstanding nature of the trees. [Enclosures 7,8,9]

34. The individual homeowners, plaintiffs in this action, all made the decision to purchase, improve, invest in and remain in their homes on Fountain Avenue in large part because of the bucolic beauty and other tangible benefits the shade trees and other trees in question provided for their property and the neighborhood. [Enclosures 6,7,8,9 ]

35. The removal of the trees on Fountain Avenue will have a significant adverse effect on the value of the plaintiffs' homes, the environment, including air quality and drainage, and damage the character and unique nature of the plaintiffs' property. [Enclosures 6,7,8,9]

### *LEGAL ARGUMENT*

### POINT ONE

### THE PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

A trial court should grant a moving party's application for summary judgment only when all of the facts viewed in light most favorably to the non-moving party permit the trial court to grant a judgment as a matter of law. The purpose of summary judgment is to eliminate unnecessary trials, which would cause needless expense and delay. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The rule directs the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the ultimate burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173 (3d Cir. 1988).

In order to prevail on a motion for summary judgment, the moving party must demonstrate the absence of an issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c). This burden can be "discharged by showing . . .

10

that there is an absence of evidence to support the non-moving party's case." Celotex Corp., supra, 477 U.S. at 323-25.

Once the moving party has met its burden, the burden shifts to the non-moving party to "show that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). It is insufficient to "simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational tier of fact to find for the moving party, there is 'no genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).

In the case at bar, the relevant facts are without dispute. The plaintiffs have standing as third party beneficiaries to enforce the restrictions in the defendants' right of way easement. The restrictive language in the deed is clear. Based on the facts known to the defendants at the time of the 1963 deed they cannot deny they did not agree to a residential development, which included the planting of trees. After forty years of acquiescence and defacto approval they now wish to expand their rights and modify an agreement that has been in place for more than a generation. The plaintiffs have reasonably relied on this status quo in making key financial and life style decisions. Equity does not reward those who sleep on their rights. The principal of laches requires 1) an unreasonable and unexplained delay in a failure to act and 2) detrimental reliance on the part of the party asserting laches. There are sufficiently clear facts in the record that, even viewed in a light most favorable to the defendants, the court should rule as a

11

matter of law that the defendants are equitably estopped from removing trees that have been in place for more than forty years.

### POINT TWO

### THE DEFENDANTS SHOULD BE PREVENTED FROM REMOVING THE TREES ON THE EASEMENT BASED ON THE EQUITABLE PRINCIPALS OF LACHES

In this case defendants should be prevented from engaging in activity that would cause permanent harm to the plaintiffs and environmental damage to their neighborhood. The plaintiffs were granted a temporary restraining order, which has remained in place for five years. The issue in the case is not about monetary damages but rather about quality of life and environmental issues. The defendants desire to change the long-standing status quo in the plaintiffs' neighborhood. The plaintiffs have established rights as beneficiaries of the easement restriction to prevent the trees destruction. Since the defendants allowed the planting of the trees and have agreed to peacefully co-exist with them for forty years they should not now be permitted to seek their destruction.

Plaintiffs seek a permanent injunction prohibiting damage to their property interests, as well as the environment. The specific legal issue in this case turns on a question regarding an easement or contract. Since the court is being asked to determine issues surrounding specific performance of a contract, the equitable theory of laches applies.

Laches will prevent a party from seeking specific performance on a contract, or easement when there has been an unreasonable delay in pursuing their rights such that the

12

rights of others would now be substantially and negatively effected. 25 Williston on Contracts §67: 21 (4th Ed.) Laches is a complete equitable bar from specific performance when the facts and circumstances particular to the case at hand indicate that a party has abandoned its contractual rights and that the delay is both unreasonable and prejudicial to the other party. West Jersey Title and Guaranty Company vs. Industrial Trust Co., 27 N.J. 144 (1958); Hinners vs. Banville, 114 N.J. Eq. 348 (1933). In our case it is well established that the defendants have delayed taking any action to enforce their claim on this easement for more than forty years. It is equally well established that the destruction of the trees and vegetation in question will cause harm to the plaintiffs.

Analyzing laches as a defense to performance of a contract the court should consider the length of the delay, the reasons for the delay, and any changed conditions between the parties. Lavin v. Board of Education of the City of Hackensack, 90 N.J. 145 (1982). An unexplained lengthy delay alone may result in the court's applying the principle of laches, however courts generally look to the particular facts and circumstances of a case to decide if this principle should be applied.

In this case, not only did the defendants sat on their rights for a generation, they expressly consented to the planting of the trees in 1963. The defendants have fully enjoyed the legal benefits of their easement for more than forty years, before unilaterally attempting to expand their authority in this right of way. There has been no compelling change of circumstances that would require this court to overlook the defendants' actions for the past forty years.

While laches is an old legal principle in equity, it is still followed in our courts and should be applied in this case. In Old Republic Insurance Company vs. Currie, 284

N.J. Super. 571 (1995) Union County Superior Court, Chancery Division applied this principal to a mortgage. Following this principle the court precluded a party from seeking interest on an eleven-year-old note based on the failure to take timely appropriate legal action. The Chancery Division citing <u>West Jersey Title and Guaranty vs. Industrial Trust Co.</u>, 27 N.J. 144 (1958) held that plaintiff's inaction for eleven years prejudiced the defendants, and that based upon a principle of laches they could not seek specific performance on this mortgage.

In <u>Lavin v. Board of Education of the City of Hackensack</u>, 90 N.J. 145 (1982) the Supreme Court of the State of New Jersey provides a clear explanation of the principle of laches as it applies to a party's legal obligation under a contract. The court in <u>Lavin</u> stated that an unreasonable and unexcused failure to act may be the equivalent of a waiver of a particular right. <u>Lavin</u>, <u>supra</u> at 151. In <u>Lavin</u>, the Court went on to discuss general principles of equity, and how laches should be applied in analyzing specific performance on a contract. In determining whether to apply laches as a bar to performance on a contract the court should examine whether the party asserting this right has been mislead or has been harmed by the failure of the other party to act.

In the instant matter, the actions and/or omissions on the part of the defendants in permitting the planting of the trees and failing to seek timely removal, reasonably lead the plaintiffs to believe that there were specific limitations imposed on the defendants in the right of way easement. The specific language that this case turns on in the restrictive covenant within this easement states: "the defendants will bury any such pipes to a depth not to interfere with cultivation of the land." Cultivation in this case can best be defined by the actions and/or inactions of the parties over the past forty years. In 1963 when the

14

defendants agreed to retain the restrictive language in this easement and allowed residential development including planting of trees within the right of way, they defined cultivation for all future property holders.

The individual plaintiffs to this action made the decision to purchase their homes and to invest considerably in these properties based upon their understanding and interpretation of the restrictive language in the easement. Their understanding of this restriction was based on the facts and circumstances and the actions of the parties involved over a lengthy period of time. [Enclosures 8,9] The principle of laches as clearly set forth by our courts should equitably estop the defendants from unilaterally attempting to enlarge their rights within this easement to the plaintiffs' detriment. Lavin v. Board of Education of the City of Hackensack, 90 N.J. 145 (1985)

The facts of this case have not been significantly altered since the Honorable Judge Alfred M. Wolin, U.S.D.C. issued a ruling in this case. No additional facts were developed in discovery that would require the court to deviate from the rulings of Judge Wolin as set forth in his written opinion. [Enclosure 1] The defendants lack of action since the issuance of the TRO only further supports the plaintiffs' argument that laches should prevent the defendants from now seeking the court's authority to act.

The court found that the defendants could not establish a sufficient basis to remove the trees and that the balance of equities clearly favored the plaintiffs. The court was particularly impressed by the fact that the defendants have been effectively monitoring the pipeline for decades in compliance with DOT regulations without any incident. The court, in its previous order, underscored the fact that the environmental

harm caused by the removal of the trees would be permanent and would cause irreparable damage to the plaintiffs in this litigation. The court stated on page six of its opinion

> "Plaintiffs allege that the trees at issue here provide shade, oxygenation of the air, they prevent soil erosion, enhance the character of the street and protect the Township's tax base by adding value to the homes on Fountain Avenue..... The trees add inestimable value to the Town and residential life. As the trees are many decades old, they are essentially irreplaceable." [Enclosure 1]

Plaintiffs submit that the trees, which were planted for the direct benefit of the plaintiffs as homeowners, cannot be removed without causing direct harm to the homeowner/plaintiffs.

In April 2000 Texas Eastern notified the homeowners for the first time they intended to remove all of the trees from this easement. The right-of-way and easement agreements governing the relationship between these parties are dated May 6, 1944, January 28, 1960 and amended further on January 23, 1963. [ Enclosure 3, 4 and 5.] The original easement was granted to the Defense Plant Corporation who was a predecessor in title to Texas Eastern, permitting them to lay, operate, renew, alter, inspect and maintain pipelines within this easement. This easement further provided that they would "bury such pipelines so that they will not interfere with the cultivation or drainage of the land." The right-of-way/easement granted to Texas Eastern does not specifically provide for the rights to cut or remove trees from the properties in question, but rather adopts the original restrictive language. [Enclosures 3,4,5]

The trees were planted in 1963 when the development was planned and the homes were built. The trees were planted with the full knowledge of Texas Eastern who was a party to the 1963 deed and Duke Energy's predecessor in title, who did not object.

16

[enclosure 5]] The majority of the trees in question are seventy-five feet tall and have existed in excess of forty years. There has never been any attempt on the part of the defendants to remove any of the trees or vegetation in question during this period of time. The pipeline companies approved the planting of these trees and most likely supervised their planting in order to protect their pipeline from any digging. Plaintiffs are unaware of any objection by Texas Eastern or any predecessor in title to the trees or the vegetation planted in this easement. The trees were specifically planted for the benefit of the homeowners who are the plaintiffs in this action. The trees, the easement, and the pipeline were all present when the plaintiffs took title to their property.

The impact of tree removal as contemplated by the defendants would be significant beyond the aesthetic harm. There are considerable environmental and quality of life issues involved in any such action, including loss of shade, wind breaks, increased noise levels, soil erosion, loss of water absorption, increased water runoff, loss of oxygen replacement and the natural air filtration and air cleansing that trees provide. In addition, there would be damage to the natural wildlife habitat in these trees. The species of trees in question include London plane, silver and sugar maple, blue spruce, white pines, Colorado spruce, white dogwood, yew, magnolia, red oak, pin oak and Norway spruce. The loss of these trees and shrubbery would have a negative impact on the property value of the plaintiffs, would eliminate shade for walking and cooling the property and homes of the plaintiffs, and would have an adverse effect on outdoor activities on the plaintiffs' property. [Enclosure 6]

The defendants have alleged in this litigation that the removal of trees along Fountain Avenue is necessary in order to inspect and maintain their right of way.

Defendants, however, have been inspecting and maintaining this right of way for in excess of 40 years and have not until the instant litigation have raised any issues concerning the trees in question. The defendants adequately monitor, either by air or ground, the pipeline in question. In addition, New Jersey has a one-call system, which is provided in order to safely monitor a pipeline. [Enclosures 2,6,7,8,9]

Most importantly, the defendants' tree removal plan does not contemplate removal of tree roots or tree stumps. The defendants' plan only involves cutting down trees, grinding the stumps below the surface and leaving the root structure intact. [Enclosures8, 9] This action does not support the contention that the tree roots or any other part of the trees are posing any safety threat to the pipeline. In addition just a few months ago the defendants removed five trees from Fountain Avenue. The roots and stumps were left in place and no effort was made to ascertain if there was any encroachment on the pipeline. The defendants are in full compliance with all laws and regulations. There is no requirement to remove the trees in question and no credible evidence that this must be done. Any claim by the defendants that tree removal is necessary for safety begs the question; "where have they been for the last forty years?"

Since August of 2001, when the Superior Court issued a temporary restraining order the trees on Fountain Avenue have remained in place, and the defendant's have made additional efforts to inspect, maintain or test the pipeline. These actions are inconsistent with any sense of emergency need for public safety. Two of the stipulated facts in this case in the final pre-trial order (W, X) are 1) the defendants have continued to conduct regular inspections of this pipeline and 2) that no problems, difficulties or irregularities have been noted. [Enclosure 2] Also, the defendants regularly monitor this

section of the pipeline with a mechanical device that travels through the pipeline itself. There has never been any evidence of damage or problems with this section of the pipeline. [Enclosure 2] At this juncture, the defendants have no affirmative evidence that the trees in question create any problem, hazard or dangerous condition. The fact that the *status quo* has remained in place for forty years certainly negates this argument. Lavin v. Board of Education of the City of Hackensack, 90 N.J. 145 (1985)

The defendants' expert provides no facts which are supported by actual testing or examination of the pipeline on Fountain Avenue that will demonstrate in any reliable way that the trees pose a danger to the pipeline. The defense rhetoric concerning public safety is unsupported by competent expert testimony and is certainly inconsistent with their actions. The issues in this case must be decided on facts and evidence not on possibilities and speculation. Daubert v Merrill Dow Pharmaceuticals Inc. 509 U.S. 579 (1993)

The rights of an easement holder to keep the easement in repair and fit for use are not to be measured in terms of mere convenience, but rather in terms of reasonable necessity. Hyland v. Fonda, 44 N.J. Super. 180 (App. Div. 1957). Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591,606 (1964). The touchstone is necessity and not mere convenience. Hammett v. Rosensohn, 26 N.J. 415,425 (1958). There are no Federal or State regulations requiring either tree removal or aerial inspection. The defendants desire to remove longstanding trees in this easement is not based from necessity but from convenience.

The primary rule of construction of easements is that "the intent of the conveyor is normally determined by the language of the conveyance read as an entirety and in light of the surrounding circumstances." Hammett v. Rosensohn, supra, 26 N.J. at 415. These

19

circumstances include the physical conditions, as well as the character of the land in question. Lidgerwood Estates, supra, 113 N.J. Eq. at 407. In this case, the circumstances of the individual homeowners, and the environmental impact contemplated must be measured against the interests of the defendant. Where the scope of the easement is plain from its language, and in light of the surrounding circumstances, the easement language will control without resort to artificial rules of construction. See Tide-Water Pipe, supra, at 605.

The rights of the defendants in this case are defined by the terms of the easement, which are unambiguous. Nowhere in the easement is the Grantee Defense Plant Corporation (predecessor to the defendant Texas Eastern and Duke) afforded the right to remove trees and shrubbery along the pipeline. Moreover, pursuant to the easement, the Grantee agreed to bury such pipelines "so that they will not interfere with the cultivation or drainage of the land." There is absolutely no reference or language in the easement prohibiting the growth of trees or shrubs within the right-of-way. The easement does not provide for the Grantee's unimpaired right to remove or cut down the trees along the right-of-way. In fact, the easement itself references the "cultivation" of the land, which, acknowledges the rights of property owners and the homeowners to plant trees and other shrubs on the property, free from interference by defendants. This interpretation is supported by the facts of this case.

When Texas Eastern executed the 1963 deed, it was understood by all parties that the land in question was being sold for residential development. Texas Eastern agreed to reduce the size of their easement so Fountain Avenue and the plaintiffs' homes could be built. The map attached to the 1963 deed shows the entire University Hill Development

20

including Fountain Avenue. After this deed was recorded, the developer, (plaintiffs' predecessor in title) built the homes and planted the trees in the right of way easement with the knowledge and consent of the defendants.

The destruction of long-standing trees and shrubbery, and the accompanying burden on the homeowners was not within the intent of the parties, when the grant in this case was made. When plaintiffs purchased their homes they had every right to expect that the easement holder would not attempt to alter or expand the easement in a manner, which unreasonably interferes with the use of their property and causes unreasonable damage. The history of this property, and its use, is perhaps the best evidence that supports plaintiffs' position. After approving the planting of the trees, allowing their growth, and co-existing with them for a generation, the defendants should be equitably estopped from seeking their destruction.

Plaintiffs' expert will demonstrate that the growth of the tree roots is confined to the upper 2-2½ feet beneath the ground surface. Roots require oxygen, which is only found in the pore spaces near the surface. Thus, it is incorrect to suggest that the tree roots have, or will reach down through the soil, to grasp or damage the pipelines. In fact, the expert report supplied by the defendants generally agrees with plaintiffs' expert, Professor Hamilton, with respect to this issue. The fact that the defendants do not even propose to remove the tree roots or stumps supports the plaintiff's position. [Enclosure 6]

The trees located on along Fountain Avenue are an integral part of the community. The use and enjoyment of plaintiffs' homes and the normal use of their property are largely dependent upon the aesthetic and environmental benefits of the trees. These interests demand reasonable protection. The defendants have not demonstrated a

21

sufficient basis for the intentional and unreasonable action contemplated in destroying this property.

If the defendants are permitted to remove the trees in question, the plaintiffs will suffer a permanent loss. The environmental impact and the impact on the quality of life to the plaintiffs would be immeasurable and cannot be adequately or properly compensated by money damages. Maintaining the Temporary Restraining Order and granting the plaintiffs' application for permanent injunctive relief will only maintain the *status quo*. After 40 years, the defendants can hardly claim any urgency. There was no evidence at the beginning of this case that the trees caused a safety hazard to the pipeline and the evidence in this case remains that the trees can continue to safely co-exist with the defendants' pipelines.

The defendants' proposed tree removal interferes with the cultivation and drainage of the land, in violation of the restrictive covenant. It is well founded in the property law of the State of New Jersey that an adjacent property owner has the right to enforce a restrictive covenant clause in the title of an adjacent property owner if that restriction was incorporated for their benefit. Brooklawn v. Brooklawn Housing Corp. 124 N.J.L. 73 (E. & A. 1940); First National State Bank v. Carlyle House, Inc. 102 N.J. Super. 300 (Ch. Div. 1968), aff'd 107 N.J. Super. 389 (App. Div. 1969), certif. den. 55 N.J. 316 (1970). The court has already ruled on this issue. Count Three of the plaintiffs' complaints seeks to enforce this restriction and the limitations within the defendants' easement. The defendants should be estopped from asserting rights that they have failed to act on after more than forty years.

22

### *CONCLUSION*

It is therefore respectfully requested that the Court grant the plaintiffs motion for summary judgment on the issue of Laches and grant the plaintiff's application for a permanent injunction prohibiting the defendants from removing the trees within the defendant's easement, which have been the subject of this litigation.

STEVEN D. CAHN